BANK OF AMERICAN FORK v. SMITH et al.

No. 2488.   Decided April 2, 1914 (140 Pac. 122).

1. SUBSCRIPTIONS—CONSTRUCTION—EFFECT OF INSTRUMENT. An instrument provided that the subscribers agreed to build a bridge across a river and agreed to pay "from $100 to $500 each," as might be required to complete the bridge, that they had each deposited $100 in plaintiff bank to be checked out by J., secretary and treasurer, the balance to be forthcoming as called for by him to complete the bridge, which was to be completed

within thirty days, or before then, if possible. *Held*, that the contract was in the nature of a subscription by which each subscriber bound himself to contribute not to exceed $500, for the construction of the bridge as called for, each subscriber being severally liable on the contract to the amount of his subscription, and that it was no defense to such liability that the treasurer borrowed the sum necessary to complete the bridge from plaintiff bank, instead of immediately calling on the subscribers therefor. (Page 292.)

2. SUBSCRIPTIONS—CONSTRUCTION OF BRIDGE—TIME. Where a subscription contract for the construction of a bridge provided that it should be completed within thirty days, or before then, if possible, but the subscribers made no protest nor objection to the progress of the work, nor to the delay beyond the time specified, time was not of the essence of the contract, nor a condition precedent, and hence the delay was no defense to the subscribers' liability. (Page 293.)

3. SUBSCRIPTIONS—EQUITABLE ASSIGNMENT—SUBROGATION. Where after defendants had subscribed to the construction of a bridge for their joint benefit, their representative, empowered to construct the bridge, borrowed money necessary for that purpose from plaintiff bank, and applied the same to the construction of the bridge, instead of immediately calling in the subscriptions, his act constituted an equitable assignment of the obligations assumed by the subscribers to the bank, and it was entitled to sue on the subscription in its own name as the real party in interest.[1] (Page 294.)

4. SUBSCRIPTIONS—CONSTRUCTION—SCOPE OF LIABILITY. A subscription provided that the subscribers agreed to pay from $100 to $500 each, as might be required to complete a specified bridge, that they had deposited $100 each in a certain bank to be used by J., the balance to be forthcoming as called for by him to complete the bridge, etc. After several had signed the instrument it was presented to L., who drew a line under the previous signatures, signed his name and that of his brother, and wrote after each twenty-five dollars. His brother repudiated such act and refused to be bound. *Held* that L. was at most liable for fifty dollars. (Page 294.)

APPEAL from District Court. Third District; *Hon. George G. Armstrong*, Judge.

[1] National Fire Insurance Co. v. Denver & R. G. R. Co., 44 Utah, 26, 137 Pac. 655, 656.

Action by the Bank of American Fork against David Smith and others.

Judgment for plaintiff. Defendants appeal.

AFFIRMED IN PART AND REVERSED IN PART.

*A. C. Hatch* and *Chase Hatch* for appellants.

*Van Cott, Allison & Riter, J. R. Haas* and *J. H. Stockman* for respondent.

FRICK J.

This action was brought to recover a specific amount of money from each one of the defendants named above. The action was dismissed as to the defendant Wm. H. Lindsay, and he will not be considered further as in the case. While the complaint is framed in two counts and is very long, yet, as we construe it, the action is based on a written agreement entered into between the parties which, in words, figures and marks, is as follows:

"American Fork, Utah, Jany. 29, 1909.

"We, the undersigned, hereby agree to build a bridge across Green River at the mouth of Dry Wash, Uintah County, Utah, for the purpose of ferrying our sheep &c.

"We also further agree to pay from $100 to $500 each, *or as much more* as may be required to complete said bridge. We have this day deposited $100 each, *to be deposited* in the Bank of American Fork, American Fork, Utah, to be checked out by Jacob E. Jensen, Sec. and Treas. and the balance is to be forthcoming, as soon as called for by Jacob E. Jensen, as Sec. & Treas. to complete said bridge.

"Said bridge is to be completed within thirty days from above date, or before thirty days if possible.

"After completion of said bridge, we the undersigned do hereby bind ourselves and will incorporate, and said company shall be called the Green River Transient Company.

"Jensen & Coddington,
"Per J. E. Jensen.
"Crystal Bros.,
"Per J. S. Crystal.
"W. H. Grant.
"Price Bros.,
"By M. E. Price.
"David Smith.
"Albert Smith.
"R. Jones & Sons.
"Wm. Coleman & Clotworthy.

"James L. Lindsay, $25.
"William H. Lindsay, $25."

The words in italics were erased by drawing a pen through them after the agreement had been subscribed by the first four subscribers, and before any of the appellants subscribed it. The first four subscribers, however, approved and complied with the terms of the agreement as altered by the erasure and hence no question arises with respect to said alterations. After the first four had subscribed the agreement, one of their number, M. E. Price, came to Salt Lake City where he first presented it to David Smith, the fifth subscriber, who it seems was also interested in the construction of the bridge referred to in the agreement. Mr. Smith, was, however not satisfied with the wording of the writing, in that it was left uncertain as to the amount each subscriber might be called on to pay, so he erased the words "or as much more" from the agreement, and by doing so left the maximum amount to be paid by each subscriber $500 and no more. Mr. Smith paid Price the $100 mentioned in the agreement. The agreement was then presented to the subscribers next in the order it is signed by them, and they all signed the same as changed by Mr. Smith and each paid $100. After this the agreement was presented to James L.

Lindsay, who, with an indelible pencil drew a line below the
other names on the paper and then signed his own name
thereto, and, without the knowledge or authority of his
brother, Wm. H. Lindsay, also signed the latter's name, and
placed twenty-five dollars opposite his own and twenty-five
dollars opposite his brother's name and paid the two sums to
Mr. Price. Wm. H. Lindsay, however, repudiated the act of
his brother, and, it being conceded that James L. Lindsay
had no authority from his brother, the latter was dropped out
of the case. The erasure of the words "to be deposited" is
wholly immaterial here, and requires no consideration. The
pleadings are very long, taking up about seventy-five pages
of the printed abstract. We shall not attempt to set them
forth even in substance. It must suffice to say that the five
defendants who remain in the case, after admitting the sign-
ing of the agreement and the payment of the amounts here-
inbefore stated, set up various defenses, all of which were
fully gone into at the trial. The principal defense, how-
ever was, that the payment of $100 made by each was all
that each one was required to pay. Mr. Lindsay's defense
was that he was not indebted in any sum. The evidence ad-
duced at the trial is quite voluminous, so much so that we
shall not even attempt a synopsis thereof, and we shall refer
to such parts only as may become necessary to make clear
the point decided.

The case was tried to the court without a jury. The find-
ings of the court fairly reflect both the pleadings and the
evidence, and, after setting forth the agreement sued on, are
in substance as follows: That all the parties who signed the
agreement were engaged in the business of buying, selling,
grazing, and herding sheep in Utah, and were desirous of
constructing a bridge across Green River in said state, so
that they could more conveniently and at less expense drive
their sheep from one side to the other of said stream in cer-
tain seasons of the year, and thus avoid long drives with
their sheep; that all parties desired that such bridge should
be completed within thirty days after January 29, 1909,
and that "with that end in view each of the parties signing

said agreement promised and agreed to pay as much as $500 towards the completion of such bridge, except the said James L. Lindsay, who promised and agreed to pay the sum of $250, if so much should be required, and, if not so much was required, to pay proportionately to the amount necessary to be raised." That shortly after January 29, 1909, J. S. Crystal and M. E. Price, acting for and in behalf of all of the parties to said agreement, commenced the construction of said bridge. That the money paid in by said parties soon was exhausted, and J. E. Jensen, the person named in said agreement, acting as secretary and treasurer, for and in behalf of all the parties thereto, being unable to reach all of said parties and it having become necessary to obtain money to complete said bridge, and that without borrowing money "it was an impossibility to complete said bridge within a reasonable time;" that the first four subscribers of said agreement paid in full the amount agreed by them to be paid for the construction of said bridge, but that the other parties to said agreement did not pay anything except the amount paid by each at the time said agreement was signed. That the said J. E. Jensen, as the secretary and treasurer of Green River Transient Company (that being the name in which the business was transacted), acting in behalf of all said parties to said agreement, for the purpose of constructing said bridge on the 24th day of March, 1909, borrowed from the respondent the sum of $1000, and as evidence of such indebtedness made and delivered a promissory note in the name of said company to the said respondent, payable on or before six months after date; that thereafter, on April 27, 1909 for the purpose aforesaid said Jensen borrowed an additional $500 from the respondent, and on June 21, 1909, for the purpose aforesaid, borrowed from it a further sum of $250, which last two amounts were also evidenced by promissory notes as aforesaid. That on July 1, 1909, said Jensen took up said three notes by giving in the name of said company one note amounting, with interest, to the sum of $1779.65. That no payments have been made

44 Utah—19

on said last-mentioned note on either principal or interest, except that on August 29, 1909, there was paid the sum of $275 to be applied on the principal of said note, and October 14, 1909, there was paid the sum of $196 to be applied on the principal, and the interest thereon has been paid to October 1, 1909; that said money was all necessarily used in the construction of said bridge and was placed to the credit of said company in the respondent bank, and was checked out by the secretary and treasurer for the use and benefit of all the parties to said agreement. That the respondent loaned said money as aforesaid in good faith, relying on said agreement and upon the obligations of the parties subscribing to the same assumed therein. That in June, 1909, "the said Jensen, as such officer, duly notified each of the parties to said agreement who had not paid in full that a meeting of the parties to such agreement would be held in American Fork, County of Utah, and State of Utah, at ten o'clock a. m., on July 1, 1909, to hear the report of what had been done under said agreement and to transact any other business that might come before the parties interested in such agreement. The said notice was received by all of such parties, and said meeting was attended by several of the parties thereto, and on July 2, 1909, the said J. E. Jensen, as such officer, duly notified all the parties to such agreement who had not paid in full that a meeting of the stockholders of said company was held at the said hall aforesaid. That a financial report of the condition of the company mentioned in such agreement was read and upon motion accepted. That such report showed that the company's indebtedness contracted in constructing said bridge amounted to $2263.47, and that in order to meet such indebtedness and to take up said notes at the bank of said plaintiff, and thereby to stop the interest, an assessment of 230 per cent. was levied on the amount that each of the parties to said agreement had paid. and that such sum was payable at once to the said J. E. Jensen, as such officer, and it was also reported that four herds of sheep had crossed said bridge since its completion." That afterward on about August 20, 1909,

said Jensen again duly notified all the parties to said agreement who had not fully paid their subscription of the facts contained in the preceding findings, and also notified them that unless the amount due from each one was paid, the same would be placed in the hands of an attorney for collection. That all of the parties received the notices aforesaid. That although each of said parties had full knowledge that said bridge was being erected and completed after the time specified in the agreement, yet none of them ever protested or made any objection with respect thereto.

The court then makes negative findings covering all of the defenses set up in the several answers of the defendants, and finds the amount due to the respondent to be the sum of $1308.35, with interest thereon at the rate of eight per cent. from October 1, 1909, and further finds that there is due from the defendant David Smith the sum of $230 with interest at eight per cent. from October 1, 1909, from the defendant Albert Smith a like sum with interest, from the defendants Jones & Sons a like amount with interest, from the defendants Coleman & Clotworthy a like amount with interest, and from the defendant James L. Lindsay the sum of $115 with interest as aforesaid. Conclusions of law in conformity with the foregoing findings were also made in favor of plaintiff, and judgment was entered against each one of said defendants for the several amounts aforesaid, all bearing interest at the rate of eight per cent. from October 1, 1909, until paid.

All the defendants except Wm. H. Lindsay appeal from said judgment. The assignments are very numerous, covering twenty-six pages of the printed abstract. As we view the matter, very many of the assignments are formal rather than substantial, and many things are discussed in the briefs of counsel which in our judgment are not involved in the ultimate question to be decided. Whether the appellants, or any of them, are liable in this action, in our judgment, depends upon the legal effect to be given to the agreement which they all admit they signed.

We certainly are not met with any great difficulty in determining the meaning of the agreement itself, nor in determining the object the parties had in view in entering into it. To our minds it is as clear as anything can be that the agreement is in the nature of a subscription contract, by which each subscriber binds himself to contribute a stipulated amount for a specified object or purpose. In the agreement in question we think each subscriber, except the last two, bound himself or itself to pay a sum not exceeding $500 for the purpose of constructing a certain bridge. Of that sum each one of the subscribers, except the last two, paid the sum of $100, all of which was deposited in the plaintiff bank to be used, and was necessarily, as the court finds, used, for the purpose specified. Under the agreement, in addition to this $100 paid as aforesaid, an additional amount, not exceeding, however, the sum of $400, could be called for from each subscriber, except the last two, if that amount were required to complete the bridge, which was the object contemplated in the agreement. If, therefore, the amount which each agreed to pay for and which was necessary to complete the bridge had been called for while the same was in process of construction, or immediately upon its completion, by Mr. Jensen as the fiscal agent of the parties, and whom they appointed as such in their agreement, no one, we think, would seriously contend that the subscribers of the agreement except the last two, would not have been liable up to the maximum amount specified in the agreement, or for any sum less than that amount which was necessary to complete the bridge. Does the mere fact that Mr. Jensen did not then collect the money, or that either he or some one else advanced the amount necessary to complete the bridge upon the faith of the agreement, in any way affect the legal liability or moral obligation of the appellants for any sum less than the maximum amount which was necessarily used in completing the bridge. Appellants were not concerned who, if any one, for the time being advanced the money to construct the bridge. All they were concerned about or interested in was that the money was

necessarily used in completing the same. The court found, and the finding is sustained by the evidence, that all the money obtained by Mr. Jensen, the fiscal agent of the parties, was necessarily used in completing the bridge. We are not dealing with a case where an agent has attempted to bind his principal by pledging the credit of such principal without his authority or consent, either express or implied.

It is wholly immaterial whether the materials to be used in the bridge were paid for or not so far as appellants' liability is concerned. They are not sued upon any obligation except one entered into by themselves. The borrowing of the money to complete the bridge is a mere incident. They each agreed to contribute a specified amount for the purpose of completing the bridge, and all that is asked of them, and all that the court required of them, except James L. Lindsay, is to comply with their promises. To talk about agency and implied authority of an agent merely tends to becloud the issues. Nor should they escape liability merely because the bridge was not completed within the thirty days specified in the agreement. Time was not made of the essence, neither was it made a condition precedent. Moreover, the court found that all of the appellants had knowledge of the fact that the completion of the bridge was delayed, but notwithstanding that fact they made neither protest nor objection to the progress of the work nor of the delay. The defense of time is therefore not open to them. Again, while it is true that each subscriber is individually or severally liable on the subscription contract, yet the only objection the appellants, or either of them, made respecting parties was that not all of the subscribers to the agreement were joined as parties to the action. Their objection, therefore, was the very reverse of the one they might have interposed. Nor is the objection in the form it is raised that the plaintiff cannot recover available to the appellants.

We think that, when the agreement and the transactions had under it are considered as a whole, what Mr. Jensen did in obtaining money from the plaintiff at least amounted to

an equitable assignment of the obligations assumed by, as well as the rights arising under the agreement to, the plaintiff. After the plaintiff had advanced the money necessary to complete the bridge to Mr. Jensen in reliance upon the obligations assumed by appellants in the agreement, it became the real party in interest. We have recently held that under our Constitution and statutes the equitable assignee of a chose in action is the real party in interest, and may sue as such assignee, notwithstanding that such could not have been done at common law. (*Nat'l Fire Ins. Co. v. Denver & R. G. R. Co.,* 44 Utah, 26, 137 Pac. pp. 655, 656.) But no objection was made that the plaintiff was not the real party in interest. The defense made is based on the ground that in no event are appellants liable either to the plaintiff or to any one else. For the reasons stated therefore, we are of the opinion that the judgment against all of the appellants, except James L. Lindsay, should be affirmed.

We cannot conceive however, upon what theory the judgment against Mr. Lindsay was entered or can be sustained. The plaintiff in this case cannot recover upon an estoppel, or as an innocent holder of commercial paper as against Mr. Lindsay. Mr. Lindsay, therefore, like all the other appellants, must stand or fall by the terms of the agreement he signed. When he subscribed the agreement all the others had already done so. Therefore none of them could be affected by what he did. It is very clear to us that Mr. Lindsay regarded the agreement as a subscription contract, and that in subscribing it he, as a subscriber, could limit his own liability. It is also clear that in drawing a line under the names of the prior subscribers he intended to make his subscription distinct and separate from the others, in form as well as in substance. He, therefore, agreed to subscribe fifty dollars toward the building of the bridge, and said so by what he wrote. How what he did can be construed to mean that he obligated himself to pay not exceeding the sum of $250, or one-half of the maximum sum mentioned in the agreement, is a matter beyond our comprehension.

Mr. Lindsay was either bound by all the terms of the agreement, or was bound only by such as he imposed on himself. As we read the contract, he assumed the burden of paying fifty dollars—no more, no less. It is conceded that he paid that amount; hence he has complied with the obligations he assumed by subscribing the agreement. We have less difficulty in arriving at this conclusion because plaintiff's counsel concede that Lindsay did not assume to pay the maximum amount specified in the agreement, although it had been found that that amount was necessary to complete the bridge. To concede that is to concede that Mr. Lindsay assumed no further obligation under the contract after he had paid the fifty dollars subscribed by him.

From what has been said it follows that while the judgment against the four appellants first named in the title should be and is affirmed, the judgment against James L. Lindsay is reversed, and the action as against him is dismissed, the plaintiff to recover costs as against all the appellants except James L. Lindsay and he to recover costs against the plaintiff.

McCARTY, C. J., and STRAUP, J., concur.